[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. It is found that all of the allegations of plaintiff's complaint have been proven, that the marriage has broken down irretrievably, and the marriage is ordered dissolved for that reason.
II. The Resolution of the Dispute Concerning the Value of the Family House.
The parties disagree concerning the value of their family house situated at No. 16 Rockland Drive, Enfield, Connecticut and presently occupied by plaintiff and their minor son. The property was purchased by the parties in 1978.
Joseph Plourde, a qualified real estate appraiser called by plaintiff, described the property as being in fair condition and, employing the comparable sales approach, valued it at $130,000 as of the date of trial. In his testimony he listed the repairs that were needed and noted further that the real estate market had been in decline for the past two years.
Michael Allard, also a qualified real estate appraiser, appeared on behalf of the defendant. He described the property as "not a handyman's special" and in need of "a little whitewash." In valuing the subject real estate at $146,000 he also used the comparable sales approach, but in doing so made an adjustment for the date of sale of his comparables on the premise that "the market for single family residences has leveled off in the last two years."
Plaintiff also introduced evidence that the Town of Enfield had appraised the property at $132,400 as of October 1, 1993. Neither appraiser was aware of this fact when making his appraisal. CT Page 3603
This court finds that the conclusion of plaintiff's appraiser is more credible and therefore establishes the value of the family home of the parties at $130,200.
III. The Resolution of a Potential Problem Concerning Various shares of stock owned by the parties.
The financial affidavits of the parties indicate that they own the following shares of stock with values testified to as follows:
Value per Total No. of Shares Stock Share Value
5500 Creative Resources .15 $ 825
130 Diamond Entertainment .0087 114
800 Info. America 0 —
5000 N.V.F. 0 —
500 P.S.N.H. 0 —
2600 Transatlantic Video ? ?
24 Northeast Utilities 25 600
 35 Northeast Utilities warrants .0175 61 ------- Total Value $1600
 Savings Bonds 150 ----- $1750
For purposes of simplicity only, this court will list the above established values as a group total along with other assets of the defendants.
IV. The Establishment of the Value of the Marital Estate of the Parties CT Page 3604
Plaintiff (Wife)
No. 16 Rockland Drive Total Value Enfield CT $130,200 — Mortgage 33,387
 -------- Total Equity $ 96,813 1/2 interest of plaintiff $48,407
1987 Pontiac Firebird 2,000
First Federal checking account —
Household furniture, etc. —
Stock (see Defendant below) —
Life Insurance (cash surrender value) —
Peoples Savings — I.R.A. 3,195 -------- Total $53,852
Defendant (Husband) ------------------- One-half interest in equity in No. 16 Rockland Dr., Enfield CT $48,406
1989 Chevrolet Blazer 7,000
1964 Austin Healy 50
1980 Honda motorcycle 100
1969 Honda motorcycle 50
1989 Rinker Captwa 2066 Trailer 3,000
Starcraft pop-up camper 100
Bank and credit union accounts 573
Stock and savings bonds 1,750 CT Page 3605
401K Plan 168,035
Pension Plan — Pratt Whitney Aircraft — --------- $229,064
Total Marital Assets $282,916
V. The Evaluation of the Evidence In Accordance With the Provisions of Sec. 46b-81c. Conn. Gen. Stats.
The plaintiff wife, who is presently forty-two years of age, and the defendant husband, who is forty-six, were married on December 27, 1969, twenty-four years ago. At that time plaintiff had recently finished high school while defendant was serving in the United States army. Neither party had any significant pre-marital assets. The parties resided in Portsmouth, Rhode Island for three years while defendant completed his military service, moving thereafter to Chicopee, Massachusetts. There defendant commenced his studies at the University of Massachusetts, from which he graduated in 1973 with a B.S. degree in electrical engineering. During this time plaintiff was employed as a nurse's aide.
Following graduation defendant obtained employment at Pratt and Whitney Aircraft Company in East Hartford, Connecticut, where he remained until he was laid off because of lack of work in September 1992. During the course of this employment he took several courses toward an M.A. degree in the communications branch of engineering. His particular work at the aircraft plant involved designing safety systems for experimental jet engines. His gross annual income from his employment was $56,938 in 1989, $64,383 in 1990 and $61,000 in 1991, the year the parties separated. He subsequently exhausted his income on his current financial affidavit.
Plaintiff ceased employment in 1974 following the birth of her first child, Kimberly Ann, and devoted all her working hours in performing the usual duties of a housewife and mother. A second child, son Michael, was born in 1978. In 1981 plaintiff resumed work on a part-time basis with her present employer, the New England Health and Racquet Club. In 1987 she began working full time and is presently CT Page 3606 the food and beverage director at that establishment. Her current financial affidavit reflects a weekly gross income of $292 with a weekly net after the usual deductions of $222.
Both parties are in apparent good health.
Fault
In its effort to determine the cause for the irretrievable breakdown of this marriage, the court has reviewed the testimony of the parties. The following is noted.
Plaintiff:
Plaintiff testified that initially she and her husband were happy but that arguments and fault-finding became a way of life as time went on. She mentioned the constant arguments in 1978 concerning the upbringing of the children. In her words, "he would say I didn't do a good enough job. I always had to justify my needs. He would push me and if I pushed back things got worse." Verbal abuse of plaintiff became a daily ritual when the parties moved to Enfield. In 1984, following an episode where plaintiff had been choked, defendant left the family home for a period of two months. Things were no better when defendant returned as he began drinking on an almost nightly basis thereafter. He used abusive and derogatory language to plaintiff in front of others, removed her clothes and forced her to listen to him naked. In plaintiff's words, "On occasion I'd be pushed out of bed if I didn't let him have his way." She stated that "he was very critical of my homemaking ability and said that a woman's duty was to work, have sex and do the laundry." She added that on one occasion she had called the police but never pressed to have him arrested.
Defendant:
Defendant, in recounting the circumstances leading to the separation of the parties in 1984, stated that plaintiff had been drinking at a friend's party, that she said "Don't tell me what to do" to him, that he grabbed her shoulders and shook her as they were going home and that at CT Page 3607 plaintiff's suggestion he vacated the premises the next day. He added that two months later both parties said they were sorry and he returned home. Defendant admitted tearing plaintiff's undergarments and leaving them around the house. He added that it was possible that he had complained about her using excessive electricity while vacuuming the rugs. Defendant also acknowledged that his children had asked him to stop drinking and recalled pinning his son against a wall while intoxicated. He admitted that after the parties separated he caused his V.A. tax credit to be removed from the family home, thus causing plaintiff to pay additional property taxes. Further, in the autumn of 1993 defendant failed timely to renew plaintiff's car insurance for which she had previously paid her share thus exposing plaintiff to potential personal liability resulting from a subsequent motor vehicle accident involving the daughter of the parties.
After reviewing all of the evidence on this subject, this court concludes that responsibility for the breakdown of the marriage rests with defendant.
Other Factors
It is concluded that because of his education and employment background as an electrical engineer, defendant has a better opportunity than does plaintiff for the future acquisition of capital assets and income.
The parties have contributed equally, each in his or her own way, in the acquisition, preservation, or increase in value of their marital estate.
It is felt that the evidence concerning defendant's vocational skills and employability require at least some judicial comment. He was suspended from work for 15 days in 1991 as a result of a quarrel with his superior. Defendant did not recall threatening any of his co-workers but added that he felt someone was trying to "sabotage my work." The underlying reasons for the termination of defendant's employment at Pratt and Whitney Aircraft are unclear, but his efforts to obtain other work in his chosen field have centered principally on his attendance at several "job fairs." A more vigorous effort on defendant's CT Page 3608 part to obtain employment might be more productive.
After reviewing all of the evidence as it relates to Section 46b-81c of the Connecticut General Statutes and after giving special consideration to such predominating factors as the length of the marriage, the vocational skills and sources of income of the parties, their relative opportunities for the future acquisition of capital assets and income and the causes for the dissolution of the marriage, this court orders that the marital estate of the parties be divided as follows:
Plaintiff 65%
Defendant 35%
VI. The Distribution of the Marital Estate in accordance with the Findings Made in Articles II, III, IV and V (supra)
Plaintiff (Wife) — 65% $183,895
 Whole interest in No. 16 Rockland Drive, $ 96,813 Enfield CT
First Federal — Checking account 2,000
Household furniture, etc. —
Life Insurance (C.S.V.) —
Peoples Savings — I.R.A. 3,195
 Amount due from Defendant 81,887 (From his 401K Plan) -------
Total $183,895
Defendant (Husband) — 35% $ 99,021
1989 Chevrolet Blazer $ 7,000
1964 Austin Healy 50
1980 Honda motorcycle 100 CT Page 3609
1969 Honda motorcycle 50
1989 Rinker Captwa 206 and Trailer 3,000
Starcraft pop-up camper 100
Bank and Credit Union Assets 573
Stock and Savings Bonds 1,750
 401K Plan (Balance after partial 86,398 assignment to plaintiff)
 Pension Plan — Pratt and Whitney Aircraft — --------- Total $ 99,021
Total Marital Estate $282,916
VII. Supplemental Orders relating to the Distribution Ordered in Article
 A. Defendant is ordered to convey to plaintiff all of his right, title and interest in premises known as No. 16 Rockland Drive, Enfield, Connecticut. Plaintiff in turn will hold defendant harmless concerning all mortgages, taxes and other encumbrances on such property.
 B. Defendant shall also assign to plaintiff fifty percent of his Pratt and Whitney Aircraft pension, pursuant to a qualified domestic relations order.
 C. The parties shall execute all documents necessary to carry out the orders of the court.
VIII. Alimony
After reviewing all of the evidence as it relates to Section 46b-82 of the Connecticut General Statutes, the court notes the following:
After having been employed as an electrical CT Page 3610 designing engineer at Pratt and Whitney Aircraft for about eighteen years, earning as much as $64,000 annually, and one year after this dissolution action was initiated by plaintiff, defendant was discharged by his employer, ostensibly because of lack of work but also accompanied with strong suggestive overtones of inability to cooperate harmoniously with his immediate superior. Since his discharge in September 1992 his efforts to seek other employment appear to this court to have been somewhat less than effective or determined.
With the above as background and being also mindful that under appropriate circumstances an award of alimony maybe based on the earning capacity rather than the actual earnings of a party when there is, as here, specific evidence of his previous earnings, this court orders that defendant pay to plaintiff as alimony the sum of $50 per week for a period of twelve years.
This order shall be non-modifiable as to term only, but shall sooner terminate upon the remarriage of the plaintiff her cohabitation with an unrelated male within the meaning of the statute, or upon the death of either party.
During such time as defendant is required to pay alimony the parties shall annually, commencing April 15, 1994, exchange federal income tax returns and shall also, annually commencing October 15, 1994, supply each other with a certified statement concerning gross and net income.
The purpose of this order is to provide plaintiff with the means to continue her former lifestyle, to reduce her existing liabilities, and with the maturity and education of her children behind her, to enable her in sufficient time to thereafter to devote her full time and effort to her chosen field of employment with the ultimate goal of finally carrying her many financial burdens alone.
This order shall not extinguish any arrearage of alimony or support which may presently exist by virtue of any pendente lite order of this court or otherwise.
IX. Orders Concerning the Minor Child. CT Page 3611
A. Custody and Visitation
 The plaintiff shall have sole custody of the minor child, Michael. The defendant shall have reasonable rights of visitation.
B. Support
 The defendant is ordered to pay plaintiff as support for said minor child the sum of $80 per week.
C. Health Insurance
 Both parties shall maintain health insurance for the benefit of the minor child as the same is at their place of employment. They shall share equally all unreimbursed medical, dental, ophthalmological or orthodontic or pharmaceutical expenses. The provisions of Section 46b-84c of the Connecticut General Statutes shall apply.
D. Exemption
 The defendant shall be entitled to take his minor son, Michael, as an exemption on his federal and state income tax returns.
E. Current Arrearages
 Defendant is ordered to pay plaintiff an arrearage of child support in the amount of $324 together with his share of medical expenses incurred on behalf of said minor child in the amount of $221, for a total amount due plaintiff of $545.
X. OTHER ORDERS
A. Counsel Fees
 Because of the orders previously made, no award of counsel fees is made to either party.
B. Previous Tax Returns CT Page 3612
 Defendant shall be solely responsible for and shall hold plaintiff harmless from any tax liability or penalty resulting from defendant's failure to file a federal tax return for the calendar year 1987 or from his negligence in filing or failing to file any other tax return.
C. Liabilities
 Each party shall be solely responsible for all liabilities shown on his or her financial affidavit and shall hold the other party harmless in that regard.
D. Life Insurance
 There is no evidence either that defendant presently has any life insurance or of his insurability. Accordingly, no order is entered on this subject.
BY THE COURT
John D. Brennan State Judge Referee